UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

UNITED STATES OF AMERICA       :

     - v. -                 :      11 Cr. 294 (NRB)

YURIEL CEPEDA,             :

          Defendant.      :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x


## GOVERNMENT'S SENTENCING MEMORANDUM


 

PREET BHARARA
United States Attorney for the
Southern District of New York

Jessica Ortiz and Ryan P. Poscablo,
Assistant United States Attorneys
   - Of Counsel -

The Government respectfully submits this memorandum in connection with the sentencing of the defendant, Yuriel Cepeda, scheduled for October 3, 2012, at 4:30 p.m.  For the reasons discussed below, the Government submits that a sentence within the range of 24 to 30 months' imprisonment as provided by the plea agreement entered into between the Government and the defendant would be sufficient, but not greater than necessary, to comply with the purposes set forth in Title 18, United States Code, Section 3553(a)(2).  *See* 18 U.S.C. § 3553(a).

## BACKGROUND

### A.    The Offense and Guidelines Calculations

The defendant was charged in an indictment, 11 Cr. 294 (NRB) (the "Indictment"), with conspiring to commit Hobbs Act Robbery and a narcotics conspiracy.  The Indictment charges Yuriel Cepeda and two co-defendants with their participation in a conspiracy from at least January 2011 up to, and including on or about February 28, 2011, in which the defendants agreed to commit a robbery of a drug dealer. The defendant pleaded guilty pursuant to a plea agreement to Count One on May 25, 2012.

The plea agreement sets forth a stipulated Guidelines calculation, assuming the defendant's continued acceptance of responsibility, of a total offense level of 17 and Criminal History Category I, resulting Stipulated Guidelines Range of 24 to 30 months' imprisonment. The Government does note that the Pre Sentence report correctly calculated the Guidelines, assuming the Court finds that the defendant should receive a reduction for acceptance of responsibility, of a total offense level of 18 - including a one level addition because a controlled substance was the object of the robbery - and Criminal History Category I, resulting in a Guidelines Range of 27 to 33 months' imprisonment.

Probation recommends a sentence of time served, which would amount to merely 8 days'

imprisonment.  (PSR pp. 17).  Defendant also requests a term of probation.

**B.     The Offense**

In mid-January 2011, agents from the Drug Enforcement Administration learned from a cooperating witness (CW) that Yuriel Cepeda, had discussed a potential robbery of an individual who possessed narcotics in New York, New York with the CW.

Over the period of nearly a month from January 2011 through February 2011, the defendants - namely Cepeda - had several recorded telephone conversations and meetings with the CW.  Specifically, at the beginning of the investigation, the CW met solely with Cepeda to discuss the robbery.  In fact it was not until February 23, 2011, a month after Cepeda and the CW engaged in numerous telephone conversations and meetings about the robbery and just five days before the defendant and his co-conspirators were arrested, when another one of the defendants joined Cepeda at a meeting with the CW.  During these meetings and calls the details of the robbery were discussed – including the location and the type of narcotic and quantity to be taken - 15 to 20 kilograms of cocaine – as well as the fact that Cepeda would be responsible for ensuring that the narcotics were sold after the robbery and the CW received his portion.  What is telling during these conversations and contrary to the defendant's assertions that the defendant did not do any of the planning is that Cepeda was the one asked how many kilograms of cocaine would be available for the robbery; it was Cepeda who told the CW that Cepeda and his crew would use a car to stop the victim as he was driving in order to carry out the robbery; it was Cepeda that indicated he was ready to do the robbery and it was Cepeda that indicated that he had other people ready to do the robbery.  And that was in fact the case.  It was Cepeda who sought out and recruited the other four individuals who arrived on the day of the robbery, prepared to

2

carry out the robbery.  In fact, it was only Cepeda, and none of the other defendants, who maintained communication with the CW during the investigation.

On the day of the planned robbery, Cepeda, along with one of his co-conspirators, met with the CW prior to the robbery and again discussed the planned robbery and how they intended to carry out that robbery.  After that conversation, Cepeda and his co-conspirators went to the area where the BMW containing the narcotics was located.  Contrary to his statements that he had no intentions of committing the robbery, Cepeda and his co-conspirators got out of their vehicles and  walked toward the BMW and appeared to be looking in the BMW and conducting counter surveillance.  One of the officers observed one of the four individuals adjusting the area of his waistband.  Although Cepeda re-entered his vehicle, shortly thereafter, he and his co-conspirators were placed under arrest.  During a canvass of the area in the vicinity of the BMW, one of the officers found a tire jack handle that appeared to be missing from the trunk of the vehicle that Cepeda's co-conspirators had arrived in.

## DISCUSSION

The United States Sentencing Guidelines still provide strong guidance to the Court following *United States* v. *Booker*, 543 U.S. 220 (2005), and *United States* v. *Crosby*, 397 F.3d 103 (2d Cir. 2005).  Although *Booker* held that the Guidelines are no longer mandatory, it held also that the Guidelines remain in place and that district courts must "consult" the Guidelines and "take them into account" when sentencing.  543 U.S. at 264.  As the Supreme Court stated, "a district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range," and that "should be the starting point and the initial benchmark."  *Gall* v. *United States*, 128 S. Ct. 586, 596 (2007).

3

After that calculation, however, a sentencing judge must consider seven factors outlined in Title 18, United States Code, Section 3553(a): "the nature and circumstances of the offense and the history and characteristics of the defendant," 18 U.S.C. § 3553(a)(1); the four legitimate purposes of sentencing, *see id.* § 3553(a)(2); "the kinds of sentences available," id. § 3553(a)(3); the Guidelines range itself, *see id.* § 3553(a)(4); any relevant policy statement by the Sentencing Commission, *see id.* § 3553(a)(5); "the need to avoid unwarranted sentence disparities among defendants," *id.* § 3553(a)(6); and "the need to provide restitution to any victims," *id.* § 3553(a)(7). *See Gall* v. *United States*, 128 S. Ct. at 596 & n.6.

In determining the appropriate sentence, the statute directs judges to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing, which are:

(A)   to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B)   to afford adequate deterrence to criminal conduct;

(C)   to protect the public from further crimes of the defendant; and

(D)   to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a)(2).

Courts may not presume that the appropriate sentence necessarily lies within the Guidelines range, but "the fact that § 3553(a) explicitly directs sentencing courts to consider the Guidelines supports the premise that district courts must begin their analysis with the Guidelines and remain cognizant of them throughout the sentencing process." *Gall*, 128 S. Ct. at 596 n.6. Their relevance throughout the sentencing process stems in part from the fact that, while the

Guidelines are advisory, "the sentencing statutes envision both the sentencing judge and the Commission as carrying out the same basic § 3553(a) objectives," *Rita* v. *United States*, 127 S. Ct. 2456, 2463 (2007), and the Guidelines are "the product of careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions," *Gall*, 128 S. Ct. at 594; *see also Rita*, 127 S. Ct. at 2464; *United States* v. *Rattoballi,* 452 F.3d 127, 133 (2d Cir. 2006) (the Guidelines "'cannot be called just 'another factor' in the statutory list, 18 U.S.C. § 3553(a), because they are the only integration of the multiple factors and, with important exceptions, their calculations were based upon the actual sentences of many judges.'") (*quoting United States* v. *Jimenez-Beltre*, 440 F.3d 514, 518 (1st Cir. 2006) (en banc)).  To the extent a sentencing court varies from the Guidelines sentence, "[it] must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance."  *Gall*, 128 S. Ct. at 597.

## I.    The Defendant Is Not Entitled To A Two-Level Reduction For Acceptance Of Responsibility

Despite pleading guilty to Count One of the Indictment, the defendant – both through his own words during his pre-sentence interview and through the words of his counsel – has failed to fully accept responsibility for his conduct.   "[A] district court's decision not to grant a defendant a section 3E1.1 adjustment [for acceptance of responsibility] is entitled to great deference on review." *United States* v. *Taylor,* 475 F.3d 65, 68 (2d Cir. 2007) (per curiam) (citation and internal quotation marks omitted). "Whether the defendant has accepted responsibility is a factual question, and a district court's determination in this regard [will] not be disturbed unless it is without foundation." *Id.* (quotation marks and alterations omitted). "Although a guilty plea is

significant evidence of acceptance of responsibility, it does not entitle the defendant to an

adjustment . . . as a matter of right; other conduct . . . that is inconsistent with . . . acceptance of

responsibility may outweigh a guilty plea." *United States* v. *Hirsch*, 239 F.3d 221, 226 (2d Cir.

2001) (citations and internal quotation marks omitted); *see also United States* v. *Carmona*, 361

Fed. Appx. 166, 169 (2d Cir. 2010) (affirming denial of credit for acceptance of responsibility

where defendant pleaded guilty to the charged offense, he nevertheless refused to admit to the

full extent of his participation in the charged conspiracy); *United States* v. *Brennan*, 395 F.3d 59,

75 (2d Cir. 2005) (affirming denial of credit for acceptance of responsibility where, inter alia,

defendant "sought to minimize or conceal the extent of his guilt by grossly misstating the facts");

*United States* v. *McLean*, 287 F.3d 127, 134 (2d Cir. 2002) (affirming denial of credit for

acceptance of responsibility where defendant pleaded guilty but falsely denied quantities of drugs

that the district court determined were attributable to him); *see also* U.S. Sentencing Guidelines

Manual § 3E1.1 cmt. (n.1) (2009) ("a defendant who falsely denies, or frivolously contests,

relevant conduct that the court determines to be true has acted in a manner inconsistent with

acceptance of responsibility").

    During his interview the defendant stated:

> [T]hat he met a man who offered him $90,000 to rob a person for
> drugs and he agreed to do it. He said that the man told him to bring
> guns and a fast car but he didn't because he had never done anything
> like this before. Cepeda advised that the man kept calling him so he
> finally went to meet him. He stated that the man pointed the victim
> out be he didn't do anything and just let the victim walk back. The
> defendant advised that he knew it was illegal to rob a person, but
> didn't know that agreeing to rob a person was illegal. He informed
> that he agreed to [] commit the robbery because of the money, but
> also because the man kept calling him. Cepeda stated that he had no
> intentions on committing the robbery.

6

(PSR ¶ 26).

Cepeda's statement does not accept responsibility for the full scope of his conduct and instead minimizes his intentions and his role.  Moreover, contrary to what to he stated under oath at the time of his plea – that he knew what he was doing was wrong – he has failed to admit that he knew it was illegal to conspire with others to commit a robbery.

Furthermore, defense counsel has repeatedly minimized his client's role and criminal conduct both before this Court at various appearances and most recently in a sentencing submission on behalf of the defendant.  Specifically, defense counsel stated that "the tacit agreement by the defendant to participate in the robbery, without more, has placed him responsible for the conspiracy."  (Letter from Richard Giampa to the Court dated September 11, 2012, page 1).  He also states that the defendant would not have done this had "he not been so persistently encouraged by the government informant," and that all of the planning was articulated by the informant and that "[a]t the time of the arrest contemporaneous with the alleged time of the robbery the [d]efendant did nothing."  (Id.) Defense counsel further asserts that the defendant "should not be punished as if he had planned the criminal conduct that he is now charged [with]."  (Id at page 2).

Defense counsel's statements ignore the reality of his client's criminal conduct and involvement in this conspiracy.  To be sure, the defendant willing met and conversed with the confidential informant.  He repeatedly told the confidential that he wanted to meet with the CW first, he recruited the other individuals who agreed to participate in the robbery and told the CW that he would have other people to do the robbery.  During one meeting with the CW, Cepeda told the CW that the robbery crew has "another car which is to park in front of him, get him out

of the car and take the car from him," referring to how he and his crew would carry out the robbery.  (February 23, 2011 Meeting Transcript at page 4).  During that same meeting, Cepeda tells the CW that he is called frequently "to work," that he lives off of this type of work and that the victims will not learn that the CW has provided the information to Cepeda and his crew. (February 23, 2011 Meeting Transcript).  During that meeting, Cepeda also told the CW "it would be good for us to take the money and all from the guy . . . and before anything you have to get together with me to show me the van. . . . You have to call me more or less and tell me 'we are going in such and such car."  (February 23, 2011 Meeting Transcript).  On the day of the robbery, while talking to the CW, Cepeda stated that he wanted to be standing in front of the building where the CW said the victim would be coming out of and that he wanted to go over there immediately.  (February 28, 2011 7:15 Call Transcript at page 10).  At one point, Cepeda even indicated that the crew would use a police car to stop the victim.  (January 20, 2011 Meeting Transcript at page 10).  These intimate conversations and comments by Cepeda clearly demonstrate the extent to which Cepeda was involved in planning this robbery and dictating how the robbery was to take place.  Cepeda was not at the mercy of the CW or in anyway coerced by the CW.  In light of this, the defendant's assertions that he was not involved in the planning should be rejected and the defendant should not receive credit for acceptance of responsibility.

## II.    A Term Of Probation Is Not Sufficient To Meet The Objectives Of The Sentencing Reform Act

The Government respectfully submits that a term of probation is not sufficient to meet the objectives of sentencing in this case given the type of crime the defendant agreed to commit and that he was prepared to commit and the defendant's integral role in carrying out this criminal

conduct.  To be sure the defendant agreed to commit a violent robbery from a person.  He agreed to provide guns in connection with that robbery.  He agreed to bring people to commit the robbery.  And he did in fact recruit and bring people to commit the robbery, including a relative of his.

In the present case, a sentence within of 24 to 33 months imprisonment would be sufficient, but not greater than necessary, to comply with the purposes of sentencing.  Here, as set forth at length above the defendant agreed to engage in a violent crime and planned how that robbery would take place. Cepeda agreed to rob an individual of narcotics that were contained in a vehicle.  Cepeda and his co-conspirators went to the location where the vehicle was and prepared to carry out the robbery.

While Cepeda has no previous convictions, it is not insignificant that the defendant has had repeated contacts with the criminal justice system before and has already received numerous "passes."  During the pendency of this case he was arrested and found to be in possession of a controlled substance.  Additionally, the Government proffers that the defendant was also arrested on September 15, 2009 in Queens, NY with two other individual after one of the individuals arranged to provided a DEA confidential source with 500 grams of heroin.  At the time of his arrest, Cepeda was the front passenger in a silver Ford Expedition. Following the arrest of Cepeda and the others, DEA agents seized a black bag from the front passenger side foor that contained a clear plastic bag containing 50 pellets each containing a white powdery substance. Lab results determined that the pellets were in fact boric acid and not a controlled substance. The Government respectfully submits that it is a fair inference that Cepeda and his other co-conspirators in that case were attempting to rob the confidential informant of the money for the

9

heroin in exchange for fake drugs - an act similar to the one in this case.

Therefore, a guidelines sentence is specifically required to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense - that is to reflect the seriousness of the violent crime that the defendant agreed to carry out and; to afford adequate deterrence to criminal conduct - both specific deterrence with respect to Cepeda given his repeated contacts with crimes involving narcotics and general deterrence.

## **CONCLUSION**

For the foregoing reasons, the Government respectfully submits that a sentence within the applicable Guidelines range would be sufficient but not greater than necessary to comply with the legitimate purposes of sentencing.

Respectfully submitted,

PREET BHARARA
United States Attorney

By: _____/s/ Jessica Ortiz_____
Ryan P. Poscablo/Jessica Ortiz
Assistant United States Attorneys
(212) 637-2634/2398